UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| In re | ) | Case No. 09-15769-SJS |
| ANDREW CORRALES ARGOSINO, | ) ) ) | |
| Debtor. | ) ) | |
| UNITED STATES TRUSTEE, | ) ) | Adv. Proc. No. 09-01489-SJS |
| Plaintiff, | ) ) | |
| vs. | ) ) | PLAINTIFF'S TRIAL BRIEF |
| ANDREW CORRALES ARGOSINO, | ) ) ) | |
| Defendant. | ) | |

Plaintiff, Acting United States Trustee, Robert D. Miller Jr. ("United States Trustee"), through his undersigned counsel, William L. Courshon, submits the following trial brief in support of the United Stated Trustee's Complaint Objecting to Debtor's Discharge, filed October 27, 2009 ("Complaint"). The United States Trustee requests that the Court enter a judgment denying the discharge of defendant/debtor, Andrew Corrales Argosino ("Defendant"), in the above-captioned

PLAINTIFF'S TRIAL BRIEF - 1

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

Case 09-01489-SJS    Doc 8    Filed 04/20/10    Entered 04/20/10 21:46:14    Page 1 of 15

chapter 7 case, pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(4)(A) (first and third claims for relief).[1]

## I. INTRODUCTION

This adversary proceeding for denial of the Defendant's discharge arises from the Defendant's prepetition transfer of virtually all of his unencumbered assets, including a boat and several luxury vehicles, cash from two IRA accounts, a Rolex watch, and other property. In addition, the Defendant has made numerous false oaths regarding his financial situation. The evidence will show that the Defendant engaged in a deliberate and systematic scheme to transfer and conceal his assets in an effort to put them out of the reach of his creditors, including his ex-wife, and the chapter 7 trustee. In so doing, the Defendant has committed numerous intentional acts that undercut a fundamental principle of the bankruptcy system – full disclosure by an honest but unfortunate debtor. Instead, the Defendant has engaged in a pattern of untruths, often making conflicting statements as convenient to suit his own purposes in an effort to enable further or justify his misconduct. Given the Defendant's continued pattern of intentional transfer and concealment of assets and multiple material false oaths, the Defendant's discharge should be denied.

## II. JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157(b) and 1334(b) and General Rule 7, Local Rules W.D. Wash.

## III. STATEMENT OF THE FACTS

### A. Bankruptcy Filing

On June 12, 2009, the Defendant filed in this Court a voluntary petition under chapter 7 of the Bankruptcy Code under Case No. 09-15769-SJS. Plaintiff's Exhibit 1, at pages 1-11. Ronald G. Brown was appointed to serve as chapter 7 trustee. On July 3, 2009, the Defendant filed his schedules of assets and liabilities and statement of financial affairs. Plaintiff's Exhibit 1, at pages

---

[1] Although the Complaint includes claims for relief under 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), and (a)(5), the United States Trustee requests relief at trial solely under sections 727(a)(2) and (a)(4)(A) (first and third claims for relief), and does not intend to pursue at trial his claims under sections 727(a)(3) and (a)(5) (second and fourth claims for relief).

PLAINTIFF'S TRIAL BRIEF - 2

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

Case 09-01489-SJS    Doc 8    Filed 04/20/10    Entered 04/20/10 21:46:14    Page 2 of 15

12-48. The Defendant signed the petition, schedules, and statement of financial affairs under penalty of perjury as being true and correct. Plaintiff's Exhibit 1, at pages 3, 11, 36, and 48. The Defendant's schedules of assets disclose real property with a total value of $993,000, including the Defendant's residence and two rental houses in Renton, Washington, and personal property with a total value of $17,430, all or substantially all of which is fully encumbered or exempt.[2] Plaintiff's Exhibit 1, at pages 12-16. The Defendant's schedules of liabilities disclose secured debt of $1,093,370, no priority unsecured debt, and nonpriority unsecured debt of $115,075 (primarily credit card debt and other consumer debt). Plaintiff's Exhibit 1, at pages 17-29.

### B. Prepetition Dissolution and Contempt Proceedings

Prior to the filing of the petition, the Defendant and his ex-wife, Alice H. Argosino, were parties to dissolution proceedings in King County Superior Court. The court entered a decree of dissolution on April 17, 2008, and an amended decree of dissolution on June 13, 2008. Plaintiff's Exhibits 2, 3, 4, and 5. Under the amended decree of dissolution, the court awarded to the Defendant the majority of the community property, including three houses, a boat, and a number of vehicles, and also ordered the Defendant to pay the majority of the community debts. Plaintiff's Exhibit 4, at pages 2-6; Plaintiff's Exhibit 5, at pages 2-4. The court further ordered the Defendant to pay the secured debt on Ms. Argosino's vehicle and on the home in which Ms. Argosino resided and specifically ordered the Defendant to pay the mortgage and utilities for Ms. Argosino's residence as spousal maintenance to her for three years (through October 2010). Plaintiff's Exhibit 4, at 5-6.

On April 29, 2009, Ms. Argosino filed a motion for an order to show cause for contempt for the Defendant's failure to make payments on Ms. Argosino's vehicle, which was about to be repossessed, and to pay spousal maintenance. Plaintiff's Exhibit 6. In support of her motion, Ms.

---

[2] On September 15, 2009, September 22, 2009, and November 2, 2009, the Court entered orders granting relief from stay to authorize secured creditors to foreclose on the Defendant's two rental properties at 1186 Edmonds Place N.E., Renton, Washington, and 13832 S.E. 142nd Street, Renton, Washington. Document nos. 34, 39, and 50, Case No. 09-15769-SJS.

PLAINTIFF'S TRIAL BRIEF - 3

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

Argosino alleged that the Defendant owned a Supra boat and a number of luxury vehicles, including a Jaguar, a Porsche, a Toyota Land Cruiser, and a Suzuki motorcycle. Plaintiff's Exhibit 7. The court entered an order to show cause and set a contempt hearing on May 21, 2009. Plaintiff's Exhibit 8. Following the hearing, the court did not hold the Defendant in contempt, but concluded that he failed to comply with the decree and ordered the Defendant to make back house and vehicle payments totaling $6,781. Plaintiff's Exhibit 9. In the meantime, the Defendant had filed a motion to reduce child support and eliminate spousal maintenance, to which Ms. Argosino responded on June 9, 2009. Plaintiff's Exhibit 10.

### C. Defendant's State Court Declaration re Transfers to Fiancee

On June 11, 2009, one day before he filed his bankruptcy petition, the Defendant filed in state court a declaration under penalty of perjury in support of his motion to reduce child support and eliminate spousal maintenance ("State Court Declaration"). Plaintiff's Exhibit 11. The State Court Declaration disclosed that on February 24 and 26, 2009, the Defendant transferred to his girlfriend, Karin Bayes, the Supra boat and trailer, Jaguar, Porsche, Toyota Land Cruiser, and Suzuki motorcycle, which the Defendant valued at $43,745, to repay loans from Ms. Bayes to the Defendant totaling $70,424, dating from July 25, 2008, through June 1, 2009. Plaintiff's Exhibit 11, at pages 2-3. The Defendant further stated under penalty of perjury that he still owed Ms. Bayes a debt of at least $26,679, which he fully expected to pay back to her. Plaintiff's Exhibit 11, at pages 2-3. The State Court Declaration did not disclose that Ms. Bayes actually was the Defendant's fiancee at the time of the transfers.[3] Plaintiff's Exhibit 25, at page 67, lines 2-18.

### D. Transfers and False Oaths

The evidence will show that the Debtor intentionally made false oaths on his bankruptcy petition, schedules, and statements regarding his prepetition transfers to Ms. Bayes and other

---

[3] Ms. Bayes testified at her Rule 2004 examination on October 7, 2009, that she and the Defendant were engaged from late fall 2008 or winter 2008-2009 to June or July 2009, when she returned his ring to him. Plaintiff's Exhibit 25, at page 67, line 2, through page 69, line 2.

PLAINTIFF'S TRIAL BRIEF - 4

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

Case 09-01489-SJS    Doc 8    Filed 04/20/10    Entered 04/20/10 21:46:14    Page 4 of 15

material financial matters and that he failed to disclose other prepetition transfers encompassing virtually all of his remaining personal property. Plaintiff's Exhibit 1. The Defendant made further false oaths at his section 341 meeting of creditors on July 14, 2009, when he testified under oath that his bankruptcy petition and related documents are true and correct, that there are no corrections on those documents, and that he listed all of his assets and debts. Plaintiff's Exhibit 23, at page 3, line 10, through page 4, line 5.

### 1. False Oaths Regarding Vessel and Vehicle Transfers and Other Undisclosed Transfers to Defendant's Fiancee

Although the Defendant disclosed his prepetition transfer to Ms. Bayes of the boat and vehicles on his statement of financial affairs, his statements regarding the transfers directly contradict his statements in the State Court Declaration filed one day before the filing of his bankruptcy petition and in the transfer documents themselves. In response to question 10(a) on his statement of financial affairs, the Defendant stated under penalty of perjury that he sold the Supra boat, Porsche, Jaguar, Toyota Land Cruiser, and Suzuki motorcycle to Ms. Bayes for a total of $30,500, substantially less than the $43,745 valuation he provided to the Superior Court in the State Court Declaration. Plaintiff's Exhibit 1, at page 41; Plaintiff's Exhibit 11, at page 3. In addition, the Debtor's characterization of these transfers as "sales" conflicts with the transfer documents themselves, which evidence that all of the transfers were gifts to Ms. Bayes. Plaintiff's Exhibit 1, at 41; Plaintiff's Plaintiff's Exhibit 14, at pages 4-7, 10-13, 18-20, 22-23, 25-26, 28-30; Exhibit 15. When asked to explain this discrepancy at his section 341 meeting and at his Rule 2004 examination on September 1, 2009, the Defendant testified that he represented to the Department of Licensing that the transfers were gifts to avoid paying excise taxes on the transfers. Plaintiff's Exhibit 23, at page 20, line 19, through page 21, line 9; Plaintiff's Exhibit 24, at page 64, line 11, through page 73, line 25. The Defendant also failed to disclose Ms. Bayes's relationship to him (as his fiancee) at the time of the transfers in response to question 10(a) on his statement of financial affairs; he falsely and affirmatively disclosed "Relationship: none" as to each of the transfers. Plaintiff's

PLAINTIFF'S TRIAL BRIEF - 5

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

Case 09-01489-SJS    Doc 8    Filed 04/20/10    Entered 04/20/10 21:46:14    Page 5 of 15

Exhibit 1, at page 41.

The Defendant also was not truthful when he stated under penalty of perjury in the State Court Declaration that he had cashed in his IRA accounts but still owed Ms. Bayes $26,679. Plaintiff's Exhibit 11, at pages 3-4. The evidence will show to the contrary that the Defendant in fact transferred to Ms. Bayes the remaining balances of both IRA accounts, totaling $13,124.97, in repayment of his alleged debt to her, on February 26, 2009, at approximately the same time that he transferred his boat and vehicles to her. Plaintiff's Exhibit 16; Plaintiff's Exhibit 17; Plaintiff's Exhibit 21, at pages 2-3; Plaintiff's Exhibit 24, at page 99, line 16, through pages 102, line 10; Plaintiff's Exhibit 25, at page 39, line 19, through page 40, line 10. The Defendant, however, failed to disclose these transfers of the IRA funds to Ms. Bayes on his statement of financial affairs. Plaintiff's Exhibit 1, at pages 37-48. The Defendant further failed to disclose on his statement of financial affairs that he also transferred to Ms. Bayes payroll checks from Wells Fargo totaling $7,278.02 in April and May 2009 in repayment of his debt to her.[4] Plaintiff's Exhibit 1, at pages 37-48; Plaintiff's Exhibit 21, at pages 4-7; Plaintiff's Exhibit 25, at page 41, line 2, through page 42, line 17. Nor did the Defendant list Ms. Bayes as a creditor on his bankruptcy schedules for any unpaid balance on his debt to her, although he stated in the State Court Declaration that he fully intended to repay this debt.[5] Plaintiff's Exhibit 1, at pages 21-29; Plaintiff's Exhibit 11, at page 2.

---

[4] After the chapter 7 trustee became aware of the Defendant's undisclosed transfers to Ms. Bayes, in November 2009, he filed an adversary complaint against Ms. Bayes to avoid insider preferences to her, including the Defendant's transfers of the boat and vehicles, the IRA funds totaling $13,124.97, and the additional funds of $7,278.02, under Adv. Proc. no. 09-01499-KAO. Plaintiff's Exhibit 27. The trustee's motion for summary judgment is set for trial on April 30, 2009, at 9:30 a.m., before Chief Bankruptcy Judge Karen A. Overstreet; and the case is currently set for trial on June 30, 2010, at 9:30 a.m., before Judge Overstreet. Document no. 20, Adv. Proc. no. 09-01499-KAO.

[5] The Defendant testified at his Rule 2004 examination that he did not list the debt to Ms. Bayes on his schedules because she had subsequently agreed to forgive the debt. Plaintiff's Exhibit 24, at page 62, line 18, through page 63, line 19. Ms. Bayes, however, testified at her Rule 2004 examination that she still expected the Defendant to repay this debt, directly contradicting his testimony to the contrary. Plaintiff's Exhibit 25, at page 80, line 9, though page 81, line 7.

PLAINTIFF'S TRIAL BRIEF - 6

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

Case 09-01489-SJS    Doc 8    Filed 04/20/10    Entered 04/20/10 21:46:14    Page 6 of 15

The evidence will also show that even after the Defendant transferred the boat and vehicles to Ms. Bayes, and even after their engagement ended, he continued to use and exercise control over these assets. For example, in June 2009, he obtained an estimate for repairs to the boat prior to arranging for a trade-in of the boat and trailer for another boat and trailer. Plaintiff's Exhibit 22; Plaintiff's Exhibit 25, at page 50, line 1, through page 51, line 21, and page 53, lines 2-19. Ms. Bayes testified at her Rule 2004 examination on October 7, 2009, that the Defendant continued to drive the 2001 Jaguar when needed, at least 4-5 days per week, and was storing the 1972 Toyota Land Cruiser at his home. Plaintiff's Exhibit 25, at page 56, line 10, through page 58, line 18. This testimony is consistent with the Defendant's own testimony at his section 341 meeting on July 14, 2009, and at his Rule 2004 examination on September 1, 2009, that Ms. Bayes permitted him to use the Jaguar as needed and that he had driven it the day before the section 341 meeting and just a few days before the Rule 2004 examination.[6] Plaintiff's Exhibit 23, at page 9, line 11, through page 10, line 16; Plaintiff's Exhibit 24, at page 39, line 24, through page 40, line 12.

### 2. Other Undisclosed Transfers and False Oaths

The Defendant admitted at his section 341 meeting of creditors and/or at his Rule 2004 examination that he transferred within one year of filing virtually all of his other unencumbered personal property, including a Rolex watch and flat screen television to Sonny Pigg, a friend and former roommate, another television to Arnold Argosino, the Defendant's brother, and a dining room set and other furniture to Frank Gitten, another friend and roommate. Plaintiff's Exhibit 23, at page 12, line 2, through page 18, line 13; Plaintiff's Exhibit 24, at page 110, line 16, through page

---

[6] The Defendant's and Ms. Bayes's Rule 2004 examination testimony also evidences that they are still friends and still see each other regularly, although they are no longer engaged. Plaintiff's Exhibit 24, at page 38, line 23, through page 39, line 23, and page 40, lines 13-24; Plaintiff's Exhibit 25, at page 65, line 16, through page 67, line 10. The Defendant, in fact, expressed the hope to resume his formal relationship with Ms. Bayes. Plaintiff's Exhibit 24, at page 39, lines 17-23, and page 41, lines 13-21. Ms. Bayes candidly acknowledged at her Rule 2004 examination that she and the Defendant have been intimate on a regular basis, even after she called off the engagement, and even after he filed his bankruptcy petition. Plaintiff's Exhibit 25, at page 66, line 12, through page 67, line 10.

PLAINTIFF'S TRIAL BRIEF - 7

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

112, line 23. The Defendant, however, failed to list these transfers on his statement of financial affairs. Plaintiff's Exhibit 1, at pages 37-48.

In addition, the Defendant failed to disclose on his bankruptcy schedules or statement of financial affairs:

    a.    The Defendant's checking and savings accounts at BECU; Plaintiff's Exhibit 1, at page 13; Plaintiff's Exhibit 19, at page 10;

    b.    Ms. Argosino's domestic support claim against the Defendant for $6,781, pursuant to the state court's order entered May 21, 2009; Plaintiff's Exhibit 1, at page 19; Plaintiff's Exhibit 9; and

    c.    The IRS's claims for federal income taxes for 2005 and 2006 totaling more than $21,000, including 2005 taxes listed in the Amended Decree of Dissolution in the approximate amount of $5,285.31 and 2006 taxes totaling approximately $15,965.57 (including interest and penalties). Plaintiff's Exhibit 1, at pages 19-20; Plaintiff's Exhibit 4, at page 6, line 5; Plaintiff's Exhibit 18.

The evidence will also show that Defendant made further false oaths at his section 341 meeting and at his Rule 2004 examination when he denied ever having seen two convenience checks issued in the amounts of $1,900 and $400 on or about March 10, 2009, subsequent to his divorce from Ms. Argosino, on a Capital One credit card account that he had opened in her name during their marriage. Ms. Argosino had previously alleged that the Defendant forged her signature on those checks and deposited them into his bank account(s). Plaintiff's Exhibit 23, at page 23, line 10, through page 25, line 5; Plaintiff's Exhibit 24, at page 115, line 4, through page 124, line 15. Bank records that the United States Trustee subpoenaed from BECU and Bank of America evidence that the Defendant in fact deposited those checks via ATM into his respective accounts at those banks on or about March 12, 2009, although he had categorically denied under oath that he had done so. Plaintiff's Exhibit 19, at pages 3, 7-9; Plaintiff's Exhibit 20, at pages 3-5.

PLAINTIFF'S TRIAL BRIEF - 8

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

Case 09-01489-SJS   Doc 8   Filed 04/20/10   Entered 04/20/10 21:46:14   Page 8 of 15

## IV. ARGUMENT

### A. Denial of Discharge - General Standard under Section 727

In general, objections to discharge are liberally construed in favor of debtors and strictly against parties objecting to discharge. *In re Bernard*, 96 F.3d 1279, 1281 (9th Cir. 1996); *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985). This construction is consistent with the purpose of providing debtors with a "fresh start." *Bernard*, 96 F.3d at 1281, 1283. Despite this construction, the bankruptcy discharge is equitable in nature and is intended only for honest debtors. *Id*.; *In re Adeeb*, 787 F.2d at 1339, 1345 (9th Cir. 1986); *see also In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987) (stating that the purpose of section 727(a) is to ensure "complete, truthful, and reliable information is put forward at the outset of the proceedings").

In an action for denial of discharge under section 727, the objector must prove the elements of the cause of action only by a preponderance of the evidence. *In re Lawler*, 141 B.R. 425, 429 (B.A.P. 9th Cir. 1992). Although the burden of proof rests with the plaintiff, a debtor cannot prevail if he or she is unable to offer credible evidence after the plaintiff has established a prima facie case. *In re Cole*, 378 B.R. 215, 221 (Bankr. N.D. Ill. 2007).

Injury to creditors is not a prerequisite to denying a discharge in bankruptcy. *Bernard*, 96 F.3d at 1281-1282; *In re Adeeb*, 787 F.2d at 1343.

### B. The Defendant's discharge should be denied under section 727(a)(2) because the Defendant intentionally transferred or concealed property of the estate.

Section 727(a)(2) provides for the denial of discharge where a debtor "with the intent to hinder, delay, or defraud a creditor or an officer of the estate ... has transferred ... or concealed ... (A) property of the debtor, within one year before the date of filing of the petition; or (B) property of the estate, after the date of filing of the petition ..." 11 U.S.C. § 727(a)(2). To deny a debtor's discharge under section 727(a)(2), the court must find actual intent to hinder, delay or defraud a creditor or officer of the estate. *In re Woodfield*, 978 F.2d 516, 518 (9th Cir. 1992). "Denial of discharge, however, need not rest on a finding of intent to *defraud*. Intent to hinder or delay is sufficient." *In*

PLAINTIFF'S TRIAL BRIEF - 9

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

Case 09-01489-SJS    Doc 8    Filed 04/20/10    Entered 04/20/10 21:46:14    Page 9 of 15

*re Bernard*, 96 F.3d at 1281 (emphasis in original). To sustain an objection to discharge under this provision, the plaintiff must show subjective intent on the debtor's part. *In re Wills*, 243 B.R. 58, 65 (B.A.P. 9th Cir. 1999). Intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct. *In re Devers*, 759 F.2d at 753-754. The requisite intent may be found from the surrounding circumstances and certain "badges of fraud" including: (1) a close relationship between the transferor and the transferee, (2) that the transfer was in anticipation of a pending suit, (3) that the transferor was insolvent or in poor financial condition at the time of the transfer, (4) that all or substantially all of the debtor's property was transferred, (5) that the transfer left no assets to satisfy creditors, and (6) that the debtor received inadequate consideration for the transfer. *In re Woodfield*, 978 F.2d at 518. Not all of these factors need be present in order to find that a debtor acted with the requisite intent. *Id.*

In this case, the Defendant intentionally transferred all or substantially all of his unencumbered assets to his fiancee and other friends or relatives within one year before the filing of the petition. In February 24 and 26, 2009, the Defendant transferred to his fiancee, Ms. Bayes, a Supra boat and four luxury vehicles, which he valued at $43,745. The Defendant concealed these transfers from his ex-wife, Ms. Argosino, a creditor, and did not disclose these transfers in contested state court contempt proceedings in their dissolution case until June 11, 2009, one day before filing for bankruptcy relief. Although the Defendant alleges that he transferred this property to Ms. Bayes to repay loans from her, the transfer documents themselves reflect that these transactions were gifts. The Defendant failed to disclose in both the State Court Declaration and his bankruptcy documents that he also transferred to Ms. Bayes $13,124.97 from two IRA accounts on February 26, 2009, and payroll checks from Wells Fargo Bank totaling $7,278.02 in April and May 2009, for a total of $20,402.99.

In addition, the Defendant failed to disclose on his statement of financial affairs that he transferred within one year of filing virtually all of his other unencumbered personal property, including a Rolex watch and flat screen television to Sonny Pigg, a friend and former roommate,

PLAINTIFF'S TRIAL BRIEF - 10

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

Case 09-01489-SJS    Doc 8    Filed 04/20/10    Entered 04/20/10 21:46:14    Page 10 of 15

another television to Arnold Argosino, the Defendant's brother, and a dining room set and other furniture to Frank Gitten, another friend and roommate.

Although the Defendant alleges that he did not intend to conceal his assets from the trustee or creditors, the Defendant's fraudulent intent can be inferred from the presence of at least five badges of fraud, i.e., (1) a close relationship between the Defendant and the transferees, i.e., his fiancee Ms. Bayes,[7] his brother Arnold, and other friends and roommates; (2) the Defendant transferred or concealed property in anticipation of contested state court proceedings between the Defendant and Ms. Argosino in their divorce case; (3) the Defendant does not dispute that he was in poor financial condition at the time of the transfers; (4) the Defendant transferred all or substantially all of his unencumbered property; and (5) the transfer left no unencumbered assets for creditors. In any event, even if the Court were to determine that the Defendant lacked fraudulent intent, the evidence will clearly establish the Defendant's intent to hinder or delay creditors and the chapter 7 trustee.

For these reasons, the United States Trustee is entitled to judgment denying the Defendant's discharge under section 727(a)(2).

**C.  The Defendant's discharge should be denied under section 727(a)(4)(A) because the Defendant knowingly and fraudulently made numerous material false oaths.**

Section 727(a)(4)(A) provides for the denial of discharge if the debtor "knowingly and fraudulently" made a false oath or account in or in connection with the case. 11 U.S.C. §

---

[7] Ms. Bayes, to whom the Defendant transferred the majority of his assets, is also an "insider" of the Defendant as that term is defined in 11 U.S.C. § 101(31)(A). Although a fiancee is not a party expressly included within the definition of "insider" in the statute, the statute uses the word "includes," and under the rules of construction, "includes" and "including" are not limiting. 11 U.S.C. § 102(3). Courts have agreed that Congress did not intend to limit the classification of "insider" to the statutory definition. *In re Schuman*, 81 B.R. 583, 586 (B.A.P. 9th Cir. 1987). An insider is one who has a sufficiently close relationship with the debtor that his or her conduct is made subject to closer scrutiny than those dealing at arms length with the debtor. *Id.*; *see also In re McIver*, 177 B.R. 366, 370 (Bankr. N.D. Fla. 1995) (debtor's live-in girlfriend was "insider," where relationship between debtor and girlfriend would cause her to be able to gain an advantage similar to one arising from affinity).

PLAINTIFF'S TRIAL BRIEF - 11

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

Case 09-01489-SJS    Doc 8    Filed 04/20/10    Entered 04/20/10 21:46:14    Page 11 of 15

727(a)(4)(A). The purpose of § 727(a)(4)(A) "'is to ensure that dependable information is supplied to those interested in the administration of the bankruptcy estate so that they can rely upon it without the need for the trustee or other interested parties to dig out these true facts in examination or investigations;' the opportunity to obtain a fresh start is thus conditioned upon truthful disclosure." *In re Aubrey*, 111 B.R. 268, 274 (B.A.P. 9th Cir. 1990), *quoting In re Martin*, 88 B.R. 319, 323 (D. Colo. 1988). To sustain an objection to discharge under § 727(a)(4)(A), the plaintiff must show: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *In re Roberts*, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005).

A debtor's false oath may involve an affirmatively false statement or an omission in the debtor's schedules and statements. *Id.* at 62. A false oath is complete when made. *In re Searles*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004). A prompt correction, or lack thereof, may be probative of fraudulent intent. *Id.*

Materiality is broadly defined. A false statement is "material" if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property. *In re Wills*, 243 B.R. 58, 62 (B.A.P. 9th Cir. 1999), *citing In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984). A false statement or omission may be material even if it does not cause direct financial prejudice to creditors. *Wills*, 243 B.R. at 63.

A debtor acts knowingly if he or she acts deliberately and consciously. *Roberts*, 331 B.R. at 883. In addition, a plaintiff must show that the debtor acted with the actual intent to defraud. *Id.* at 884. A debtor's fraudulent intent may be established by circumstantial evidence or by inferences drawn from his or her course of conduct. *Id.*; *Wills*, 243 B.R. at 64.[8] A court may find the requisite

---

[8] In determining fraudulent intent under section 727(a)(4)(A), the Ninth Circuit Bankruptcy Appellate Panel in both *Roberts* and *Wills* applied the same analysis used by the Ninth Circuit in *Woodfield* to determine such intent under section 727(a)(2), including application of the "badges of fraud." *Roberts*, 331 B.R. at 884-885; *Wills*, 243 B.R. at 64; *see* discussion, *supra,* at 9.

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

intent where there has been a pattern of falsity or from a debtor's reckless indifference to or disregard of the truth. *Id.*; *cf. In re Khalil*, 379 B.R. 163, 173 (B.A.P. 9th Cir. 2007) ("recklessness can be probative of fraudulent intent"); *accord, In re Maring*, 2008 WL 1780932 at *2 (W.D. Wash. 2008).

The evidence will show that the Defendant has engaged in a pattern of falsity both in the state court proceedings with Ms. Argosino and in his bankruptcy case, displaying a reckless indifference to or disregard of the truth and making multiple false and conflicting statements under oath as convenient to justify his misconduct. The Defendant made multiple false oaths regarding his transfers to his fiancee, Ms. Bayes, in both the state court and the bankruptcy court. First, the Defendant made a false statement in the State Court Declaration when he stated that he still owed $26,679 to Ms. Bayes, and failed to disclose that he had transferred to Ms. Bayes more than $20,000 in additional funds in February, April, and May 2009 in repayment of his alleged debt to her. Then, he undervalued the boat and vehicles he transferred to Ms. Bayes at $30,500 on his statement of financial affairs in the bankruptcy case just a few weeks after he valued the same property at $43,745 in the state court litigation against Ms. Argosino. He characterized these transactions as "sales" on his statement of financial affairs, but he told the Department of Licensing that the transfers were gifts, allegedly so he could avoid paying excise tax on the transfers. He told the state court that he intended to repay his remaining debt to Ms. Bayes, but he failed to list this debt on his bankruptcy schedules. He also failed to disclose the transferee's (Ms. Bayes's) relationship to him (as fiancee) on his statement of financial affairs and affirmatively stated he had no relationship with her.

The Defendant knowingly and fraudulently made further material false oaths in this case when he failed to disclose on his schedules or statement of financial affairs: (a) his transfers of a Rolex watch and television to Sonny Pigg, a television to Arnold Argosino, and a dining room set and other furniture to Frank Gitten within one year before filing; (b) the Defendant's checking and savings accounts at BECU; (c) his debt to the IRS for federal income taxes for 2005 and 2006

PLAINTIFF'S TRIAL BRIEF - 13

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

Case 09-01489-SJS    Doc 8    Filed 04/20/10    Entered 04/20/10 21:46:14    Page 13 of 15

totaling more than $21,000; and (d) the Defendant's domestic support obligation of $6,781 to Ms. Argosino pursuant to the state court's May 21, 2009 order. In addition, the Defendant made material false oaths at his section 341 meeting of creditors and his Rule 2004 examination when he repeatedly and categorically denied ever having seen credit card convenience checks belonging to Alice Argosino that he himself negotiated and deposited into his bank accounts without her consent.

As set forth above in connection with section 727(a)(2), the Defendant's fraudulent intent for purposes of section 727(a)(4)(A) can be inferred from the presence of at least five badges of fraud in connection with the Defendant's failure to disclose these transfers and other material matters on his schedules or statement of financial affairs under penalty of perjury, i.e., (1) a close relationship between the Defendant and the transferees, i.e., his fiancee Ms. Bayes, his brother Arnold, and other friends and roommates; (2) the Defendant transferred or concealed property in anticipation of contested state court proceedings between the Defendant and Ms. Argosino in their divorce case; (3) the Defendant does not dispute that he was in poor financial condition at the time of the transfers; (4) the Defendant transferred all or substantially all of his unencumbered property; and (5) the transfer left no unencumbered assets for creditors.

The court may find that the existence of multiple false statements, together with the debtor's failure to take advantage of the opportunity to clear up all inconsistencies, constituted reckless indifference to the truth and therefore the requisite intent to deceive. *In re Sullivan*, 204 B.R. 919, 942 (Bankr. N.D. Tex. 1997). "A series of even innocent mistakes or omissions can constitute evidence of a pattern of reckless disregard for the truth ... Thus, courts look at the circumstances surrounding the omissions to determine whether they were intentional." *Id.* at 942-943.

The evidence will show that the Defendant acted knowingly and fraudulently when he signed his original schedules and statement of financial affairs but did not attempt to correct any of the numerous omissions and misstatements contained in those documents prior to filing them with the Court and when he testified falsely at his section 341 meeting that his bankruptcy documents were true and correct. Nor did he at any time attempt to amend his schedules or statements to correct any

PLAINTIFF'S TRIAL BRIEF - 14

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

Case 09-01489-SJS    Doc 8    Filed 04/20/10    Entered 04/20/10 21:46:14    Page 14 of 15

errors or omissions. The facts in this case thus evidence a reckless disregard for the truth on the part of the Defendant, establishing the requisite intent to deceive.

For the foregoing reasons, the United States Trustee is entitled to judgment denying the Defendant's discharge under section 727(a)(4)(A).

## V. CONCLUSION

The Defendant engaged in a deliberate and systematic scheme to transfer and conceal virtually all of his unencumbered assets with the intent to hinder, delay, or defraud his ex-wife, other creditors, and the chapter 7 trustee. The Defendant also knowingly and fraudulently made false oaths on his bankruptcy petition, schedules, and statements and at his section 341 meeting and Rule 2004 examination regarding his prepetition transfers to his fiancee, other transfers, and other material financial matters. For these reasons, this Court should enter a final judgment denying the Defendant's discharge under 11 U.S.C. § 727(a)(2) and (a)(4)(A).

DATED this 20th day of April, 2010

Respectfully submitted,

ROBERT D. MILLER JR.
Acting United States Trustee

/s/ William L. Courshon
WILLIAM L. COURSHON, WSBA #20468
Attorney for Plaintiff, United States Trustee

Certificate of Service

I certify under penalty of perjury that on the date this document was filed, a copy of this document was served by U.S. mail on Defendant, Andrew Corrales Argosino, 11621 S.E. 199th Street, Renton, WA 98058, and P.O. Box 40141, Bellevue, WA 98015.

/s/ William L. Courshon

PLAINTIFF'S TRIAL BRIEF - 15

Office of the United States Trustee
700 Stewart Street, Suite 5103
Seattle, Washington 98101-1271
(206) 553-2000, 9206 553-2566 (fax)

Case 09-01489-SJS    Doc 8    Filed 04/20/10    Entered 04/20/10 21:46:14    Page 15 of 15